**In re the Marriage of J.M.G.,
Petitioner, Appellant,**

v.

**J.C.G., Respondent.**

**No. C2–88–969.**

Court of Appeals of Minnesota.

Nov. 29, 1988.

S. Warren Gale, Asa E. Buttrick, P.A., Bloomington, for petitioner, appellant.

James R. Martin, Faribault, for respondent.

Considered and decided by NORTON, P.J., and PARKER and NIERENGARTEN, JJ., without oral argument.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from an order transferring custody of the parties' minor children to Pine County. The respondent contends the district court abused its discretion by ordering counseling and supervised visitation. We reverse and remand for an evidentiary hearing.

## FACTS

Upon dissolution of their marriage in July 1983, the parties were awarded joint legal custody of their two children who were five years old and three and one-half years old at that time. Judy was awarded physical custody. John was awarded custody of the children for specified periods during the summer months.

In September 1983, the Chisago County Welfare Department interviewed Judy and the children because Judy alleged the children were sexually abused by John. The children apparently stated John had washed their penises when he gave them baths even though they protested, and that John wanted the boys to sleep in his bed. The Chisago County investigation report was forwarded to Pine County Department of Human Services and the Pine County Sheriff for further investigation. John denied sexually abusing the children.

After an investigation, a county social worker concluded sexual abuse could not be substantiated and noted there was a lot of animosity between the parties. The children's answers to questions suggested the alleged abuse occurred once during the summer of 1983. The children also indicated they did not like some things about visiting their father's farm, such as taking baths, the types of toys available, or the kind of breakfast cereal. A couple which had cared for the children told the sheriff the children had told them about the alleged sexual abuse.

At a September 20, 1984, hearing the parties apparently agreed the children would be examined by the mental health center and that John would have scheduled supervised visits with the children. A licensed consulting psychologist subsequently interviewed Judy and the two children and concluded the children had been sexually abused and recommended the children not have unsupervised visits with John "until he has been treated for sexual offending." The court ordered supervised visitation continued and also ordered John to contact Steele County authorities and cooperate "in obtaining professional services for a psychological evaluation."

John was later granted weekend visitation rights and the parties were ordered to make individual appointments for counseling at a specified counseling center within three weeks of the hearing and follow

through on all recommendations made by the center. John claims the center required him to admit he sexually abused his sons before it could provide counseling. The court wrote the parties indicating it had "received word concerning John * * * and [was] told that * * * he is not treatable by Family Renewal Center, as he will not cooperate or work with them." The court indicated its order granting John increased visitation rights was "not going to become effective" until John received counseling.

John then filed a motion seeking unsupervised visits, asserting in an accompanying affidavit that he received counseling from an alternative source. John argued that the court improperly limited his visitation rights because the court never made any findings that visitation would endanger the children's physical or emotional well-being.

The court claimed it addressed the sexual abuse issue "by the method of monitoring the visitation," and denied John's request for modified visitation. Supervised visitation was continued. Although the court made no finding that the children's best interest would be served by supervised visitation or that they had been sexually abused by John, the court ordered Pine County to assume custody of the children and refer the matter to Steele County for review by Steele County officials who were ordered to "recommend appropriate counseling and treatment for the parties and their children." The court also ordered Pine County, Steele County, or a third party to supervise John's visitation with the children.

## ISSUES

1. Did the district court abuse its discretion by transferring custody of the parties' children to Pine County?

2. Did the district court abuse its discretion by ordering supervised visitation?

3. Did the district court abuse its discretion by ordering the respondent to participate in counseling?

4. Did the district court err by concluding the court's June 17, 1985 order was valid and that the court's June 25, 1985 letter to the parties constituted a stay of execution of a portion of the June 17 order?

## ANALYSIS

Visitation rights of noncustodial parents are governed in part by statute. *See* Minn. Stat. § 518.175 (1986). Parental visitation rights are "not absolute" and can be exercised only when the child's best interests are served. *See Manthei v. Manthei*, 268 N.W.2d 45, 45 (Minn.1978); *see also* Minn. Stat. § 518.175, subd. 1. The district court's discretion in deciding visitation questions is "extensive" and will not be reversed "absent a clear abuse of discretion." *See Manthei*, 268 N.W.2d at 45; *Hennessy v. Stelton*, 302 Minn. 550, 550, 224 N.W.2d 926, 927 (1974).

### 1. Custody Transfer

■ The district court did not make any finding that the children were endangered by the current custody arrangement or that custody transfer would serve the children's best interests and sua sponte ordered custody of the children transferred from Judy to Pine County. The record is devoid of any evidence that the children's residence in Judy's household is detrimental to their physical or emotional health, that transfer of custody to Pine County is in the children's best interest, or that the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the children. *See* Minn.Stat. §§ 518.176, subd. 2, 518.18(d)(iii) (1986). Consequently, the court's sua sponte order transferring custody constitutes "a clear abuse of discretion" and is reversed. *See Hennessy*, 302 Minn. at 550, 224 N.W.2d at 927. *Cf. Murray v. Murray*, 367 N.W.2d 561, 564–65 (Minn.Ct.App. 1985) (a family court in a dissolution proceeding under chapter 518 has no authority to award legal custody to a welfare board; neglect and dependency proceedings are the exclusive jurisdiction of a juvenile court proceeding under chapter 260).

## 2. Supervised Visitation

■ The court never made express findings that John sexually abused the children and it never made express findings that modified visitation rights would serve the best interests of the children. *See* Minn. Stat. § 518.175, subd. 1 (the court may restrict or deny visitation rights "[i]f the court *finds*, after a hearing," that visitation is likely to endanger the child's physical or emotional health); *see also id.* § 518.175, subd. 5 ("the court shall not restrict a parent's visitation rights unless it *finds* that the visitation is likely to endanger the child's physical or emotional health"). However, failure to make findings of endangerment to support visitation restrictions is not necessarily grounds for reversal if the evidence in the record as a whole shows a parent's conduct endangers the child. *See, e.g., Gregory v. Gregory,* 408 N.W.2d 695, 698 (Minn.Ct.App.1987).

The record in this case on alleged sexual abuse is inconclusive. Neither the sheriff's department nor the county welfare department could substantiate the allegations of John's sexual abuse. The evidence in this case largely consists of hearsay, double hearsay and other out-of-court statements which may or may not withstand the rigors of cross-examination. The record on appeal does not indicate that any of the experts, witnesses, or investigating county officials testified before the court and none of the statements was made under oath. We also note that the court's actions sometimes were based on its "judicial notice" of the circumstances and instituted without benefit of formal proceedings from which the parties could appropriately appeal.

We realize the district court is in a difficult position, must weigh competing interests in deciding visitation issues, and necessarily must rely on various sources in making its informed decisions. However, we also recognize allegations of sexual abuse have profound ramifications for the accused as well as the alleged victims. The court must insure it has an adequate factual basis before it subjects family members to the potentially traumatic effects of restricted visitation or therapeutic counseling.[1]

We do not mean to suggest the courts may not rely on appropriate medical or psychological reports and cannot act without in-court testimony. The courts' actions sometimes are dictated by the circumstances. However, after reviewing the record we must conclude the district court abused its discretion by limiting John's visitation rights and ordering counseling because the allegations of sexual abuse are not adequately proved, and the evidence and the record do not adequately show the children's best interests will be served by supervised visitation. *Cf. Clark v. Clark,* 346 N.W.2d 383, 386 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. June 12, 1984) ("The trial court abused its discretion in allowing the slow erosion of appellant's rights without any showing pursuant to the statute that reduced visitation would endanger [the minor child's] emotional health or impair her emotional development."); *Berthiaume v. Berthiaume,* 368 N.W.2d 328, 333 (Minn.Ct.App.1985) (the district court did not abuse its discretion by denying the appellant's motion for supervised visitation because the record contained "inconclusive evidence" of the alleged abuse). Accordingly, we reverse and remand this case for an evidentiary hearing on the visitation issue. *Cf. Stanford v. Stanford,* 266 Minn. 250, 258, 123 N.W.2d 187, 192 (1963) (the case was remanded "for further proceedings in which only relevant and competent evidence shall form the basis for determination of the question of custody").

## 3. Court–Ordered Counseling

■ John contends the court abused its discretion by ordering him to participate in counseling as a condition to exercising his visitation rights. There is no question that a court has the authority to order counseling in appropriate cases to ensure the safe-

---

1. We note parenthetically that counsel must assume the major responsibility for establishing the factual basis for restricting or liberalizing visitation. Counsel are responsible for eliciting relevant facts and establishing the record. To the detriment of the parties and their children, neither of those functions was adequately performed in this case.

ty and well-being of the children. *See* Minn.Stat. § 518.175, subd. 1 (1986); *see also D.A.H. v. G.A.H.*, 371 N.W.2d 1, 4 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Sept. 19, 1985) (evidence of sexual abuse supported the district court's decision which restricted visitation and required the father to submit to psychotherapy prior to further consideration of the father's visitation status).

However, here, where there is no finding of sexual abuse, and counseling was ordered evidently based on inconclusive evidence of sexual abuse, we believe the district court abused its discretion by ordering John to participate in counseling. If the evidence presented at the evidentiary hearing shows the children's well-being will be best served by counseling, the court should so find what that evidence is and then, if appropriate, may order John to participate in and successfully complete an appropriate counseling program as a condition to exercising his visitation rights.

### 4. Prior Orders

In light of the procedural history of this case, the inconclusive record, and our decision to remand for an evidentiary hearing we need not address the parties' disputes about the validity of the district court's prior orders. However, since sexual abuse allegations were made and the children's well-being is the paramount interest, the district court may in its discretion order continued supervised visitation pending the outcome of the hearing and determination of the unresolved abuse issues.

### DECISION

The district court abused its discretion by transferring custody to Pine County. The court also abused its discretion by ordering supervised visitation and requiring the respondent to participate in counseling because the evidence of sexual abuse is inconclusive and there was no showing that the children's best interests would be served by restricting visitation.

This case is remanded to the district court for an evidentiary hearing on visitation issues. The court may order super-

vised visitation pending the outcome of the hearing.

REVERSED AND REMANDED.